**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **NORMARIE ALICEA BERRIOS,**<br><br>***Plaintiff,***<br>**v.**<br><br>**MUNICIPALITY OF BARRANQUITAS,**<br><br>***Defendant.*** | Case No. 25-cv-01282 (MAJ) |

**OPINION AND ORDER**

## I. Introduction

On July 21, 2025, Plaintiff Normarie Alicea Berrios ("Plaintiff") filed the operative complaint (the "Amended Complaint") against the Municipality of Barranquitas ("Barranquitas") alleging violations of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and Plaintiff's First Amendment rights to freedom of assembly and speech under 42 U.S.C. § 1983 ("Section 1983"). (**ECF No. 4**). Before the Court is a Motion to Dismiss filed by Barranquitas seeking to dismiss the action for lack of standing and failure to state a claim. (**ECF No. 19**). For the foregoing reasons, the Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## II. Background

Plaintiff Normarie Alicea Berrios is a resident of Barranquitas who lives with quadriplegia, a neurological condition that causes a significant loss of motor function in her limbs. (**ECF No. 4 ¶¶ 41–43**). Plaintiff depends on the use of a motorized wheelchair for mobility. *Id*. Plaintiff also experiences chronic pain as a result of her condition. (**ECF No. 4 ¶ 44**).

According to the Amended Complaint, numerous architectural barriers exist on the sidewalks and sidewalk ramps of Barranquitas which make it difficult for Plaintiff to move with comfort and safety. (**ECF No. 4 ¶ 49**). Plaintiff identifies sixty-two locations within the Municipality of Barranquitas that limit her movement due to impassable sidewalks, sidewalk corners, and sidewalk ramps. (**ECF No. 4 ¶¶ 46, 49**). She further highlights several locations that she cannot navigate due to missing sidewalk ramps. (**ECF No. 4 ¶ 59**). Plaintiff also identifies several locations that she was unable to navigate due to sidewalks being obstructed with illegally parked cars. According to Plaintiff, Barranquitas maintains a pervasive practice of failing to enforce such illegal parking, including by neglecting to install proper signage, impose penalties, or take corrective measures. (**ECF No. 4 ¶ 63**).

These barriers make it impossible or dangerous for Plaintiff to navigate these areas. Many of these barriers are such that Plaintiff must navigate by traffic lanes due to impassible sidewalks, placing her at risk of injury or death. (**ECF No. 4 ¶ 18**). Because of these barriers, Plaintiff is unable to safely access municipal buildings, offices, and service counters in Barranquitas, which hampers her access to public records and civic participation. (**ECF No. 4 ¶¶ 122–123**). They also limit her from accessing Barranquitas's public transportation system. (**ECF No. 4 ¶ 124**). Plaintiff observed these conditions on July 1, 2025 and does not seek relief for incidents or barriers experienced prior to that date. (**ECF No. 4 ¶ 55**).

Plaintiff also alleges that these barriers prevent her from engaging in her First Amendment rights to speak and assemble in the vicinity of these obstacles. (**ECF No. 4 ¶ 157**). Plaintiff has future plans to engage in activities including public demonstrations advocating for ADA compliance in her hometown, peaceful assemblies, and annual

organized compliance verification visits. (**ECF No. 4 ¶ 147**). Included in these plans are "Annual Barranquitas Accessibility Rights Assembl[ies]" that Plaintiff seeks to hold each November between 2025 and 2030. (**ECF No. 4 ¶¶ 148–54**). Plaintiff has designed logistics for these events to include planned peaceful marches, elevated speaking platforms, literature distribution stations, and door-to-door petition collecting, all in the vicinity of the inaccessible sidewalks so as to raise awareness of them. (**ECF No. 4 ¶ 156**). However, because of the barriers, Plaintiff is unable to safely access them, set up the planned infrastructure, or hold accessible marches between the locations. *Id*.

On July 21, 2025, Plaintiff filed an Amended Complaint against Barranquitas alleging violations of Title II of the ADA and Section 504 of the Rehabilitation Act. (**ECF No. 4**). Plaintiff also raises a claim under Section 1983 alleging violations of her First Amendment Rights to freedom of speech and assembly. *Id.* On November 5, 2025, Barranquitas filed a Motion to Dismiss the Title II and Rehabilitation Act claims for failure to state a claim and the First Amendment claim for lack of standing and failure to state a claim. (**ECF No. 19**). Plaintiff filed a Response opposing the Motion on November 20, 2025.[1] (**ECF No. 20**). Barranquitas filed a Reply on December 8, 2025, (**ECF No. 24**), and Plaintiff filed a Surreply on December 24, 2025. (**ECF No. 29**).

[1] An "Unsworn Declaration Under Penalty of Perjury Pursuant to 28 U.S.C. Sec. 1746(1)" is appended to Plaintiff's Response. (**ECF No. 20-**1). The parties spill a considerable amount of ink debating whether the Court may consider the unsworn declaration appended to Plaintiff's Response. It is axiomatic that a Plaintiff cannot amend a complaint by asserting facts for the first time in a response to a motion to dismiss. *See Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 365 n. 5 (D.P.R. 2015) ("[T]he plaintiffs cannot, of course, add allegations or claims by furnishing them for the first time in an opposition to a motion to dismiss."); *Doe Next Friend of A v. Spears*, 630 F. Supp. 3d 290, 295–96 (D. Mass. 2022) ("It is improper, however, for a plaintiff to bolster the allegations of the Amended Complaint through the late addition of new facts in opposing a motion to dismiss.") (internal quotations omitted). Accordingly, the Court will not consider Plaintiff's unsworn declaration. It is worth noting, however, that no information contained in the unsworn declaration would alter or disturb any of the Court's conclusions if considered.

### III. Standard

Barranquitas moves for dismissal under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (**ECF No**. 19). Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6), in turn, allows a defendant to move to dismiss any complaint which fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). When addressing a motion to dismiss under Rule 12(b)(6), courts must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009). A complaint need not contain "detailed factual allegations," but must contain enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff's factual allegations must "nudge their claims across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 67 (2009) (citing *Twombly*, 550 U.S. at 570); *see also Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(1) the court "credit[s] the plaintiff's well-pled factual allegations and draw[s] all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). To establish standing, Plaintiff bears the burden of establishing three core elements: (1) that they suffered an injury in fact; (2) that the injury is traceable to Defendant's conduct; and (3) that the injury is likely to be redressed by a favorable judicial decision. *Santiago-Ramos v. Autoridad de Energía Eléctrica de Puerto Rico, AEE*, 834 F.3d 103, 106 (1st Cir. 2016).

## IV. Analysis

### A. Claims under the ADA and Rehabilitation Act

Barranquitas first seeks to dismiss Plaintiff's claims under Title II of the ADA and Section 504 of the Rehabilitation Act for failure to state a claim. Title II of the ADA prohibits discrimination against individuals with disabilities by public entities and is modeled on Section 504 of the Rehabilitation Act. *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 4 (1st Cir. 2000). "Congress enacted the ADA 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Id.* (quoting 42 U.S.C. § 12101(b)(1)). "The clear purport of Title II is to guarantee that qualified disabled persons enjoy meaningful access to public services, programs, and activities." *Iverson v. City of Boston*, 452 F.3d 94, 99 (1st Cir. 2006). To advance a claim under Title II, a plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Parker*, 225 F.3d at 5.

The Rehabilitation Act prohibits discrimination against an otherwise qualified individual based on his or her disability and applies to federal agencies, contractors, and recipients of federal financial assistance. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). Claims under Section 504 of the Rehabilitation Act require the same three elements as claims under Title II and additionally require that the Plaintiff allege "that the program or activity from which the plaintiff was excluded or denied benefits receives federal financial assistance." *Pagán v. Municipality of Toa Alta*, 2026 WL 2620610, *6 (D.P.R. Sept. 4, 2026) (citing *Parker*, 225 F.3d at 4 n. 2). Courts analyzing

claims under Title II and Section 504 have recognized these statutes as substantively interchangeable and that claims under both present a single, indivisible claim. *Toledo-Colon v. Puerto Rico*, 812 F. Supp. 2d 110, 117 (D.P.R. 2011); *see also Theriault v. Flynn*, 162 F.3d 46, 48 n. 3 (1st Cir. 1998) ("Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act, and is to be interpreted consistently with that provision.").

**i. Statute of Limitations**

Barranquitas argues that the Amended Complaint seeks relief for conduct that occurred prior to the limitations period and that the claims are therefore time barred by the one-year statute of limitations. (**ECF No. 19 at 8**). To prevail on a motion to dismiss based on an affirmative defense of statute of limitation, "the facts establishing that defense must: (1) be definitively ascertainable from the complaint and other allowable sources of information and (2) suffice to establish the affirmative defenses with certitude." *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008) (internal quotations omitted). Title II and the Rehabilitation Act do not establish a fixed limitations period, and courts hearing such claims apply the statute of limitations of either the state's personal injury statute or local discrimination statute. *Toledo-Colon*, 812 F. Supp. 2d at 119 (citing *Vargas Alicea v. Consortium of Mayaguez/Las Marias*, 360 F. Supp. 2d 367, 370 (D.P.R. 2005)). Puerto Rico's Civil Code imposes a one-year statute of limitations for personal injury actions, and the local discrimination statute, Law 44, imposes the same. *Id*. Accordingly, actions brought under Title II, the Rehabilitation Act, and Section 1983 in Puerto Rico are subject to a one-year statute of limitations. *Id.* at 119–20; *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 118 (1st Cir. 2003). This limitations period "begins to run when the plaintiff knows or has reason to know of the injury which

is the basis for his claim." *Rodriguez-Garcia v. Municipality of Caguas*, 354 F.3d 91, 96–97 (1st Cir. 2004) (internal quotations omitted).

Barranquitas charges that this action is time barred because "[t]he Amended Complaint references alleged violations spanning over thirty years but identifies no actionable conduct within the limitations period" and "the accrual date is well past one (1) year as Plaintiff would have reason to know of the alleged injury based on the facts alleged therein." (**ECF No. 19 at 8**). Although Plaintiff alleges that Barranquitas has "ongoing violations, more than thirty years after the enactment of the Americans with Disabilities Act," (**ECF No. 4 ¶ 34**), the Amended Complaint does not reveal, nor does Barranquitas identify, any date on which the Plaintiff "kn[ew] or ha[d] reason to know" of the alleged discriminations occurring prior to one year before this action was filed. *See Rodriguez-Garcia*, 354 F.3d at 96–97. The Amended Complaint states that "during her last trip to the city on July 1, 2025, Normarie experienced a series of difficulties due to the numerous architectural barriers that still persist on the ramps and sidewalks of Barranquitas, which made it difficult for her to move with comfort and safety." (**ECF No. 4 ¶ 49**). The Amended Complaint was filed on July 25, 2025, mere weeks after her most recent encounter with the barriers that form the basis for this action. Because the Amended Complaint does not affirmatively reveal that the statute of limitations period has expired, dismissal is improper at this stage. *See Pagán*, 2026 WL 2620610 at *6.

### ii. Federal Funding under Rehabilitation Act

Barranquitas argues that Plaintiff's Rehabilitation Act claims must fail because Plaintiff fails to allege that "the sidewalks or any related projects identified in the Amended Complaint were federally funded." (**ECF No. 19 at 7–8**). In other words, Barranquitas argues that Plaintiff must show that the federal funds received by them were

spent in connection with the contracts identified in the Amended Complaint. Plaintiff counters that it is enough that she alleges that Barranquitas receives federal funding because "[c]ourts have consistently held that when a public entity receives federal funds, Section 504 applies to all of its programs and activities, not merely those directly funded." (**ECF No. 20 at 10**).[2]

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Under Section 504, "Congress enters into an arrangement in the nature of a contract with the recipients of the funds: the recipient's acceptance of the funds triggers coverage under the nondiscrimination provision." *U.S. Dept. of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597, 605–06 (1986). Section 504 defines "program or activity" in the context of assistance to local governments as "a department, agency, special purpose district, or other instrumentality of a State or of a local government" or "the entity of such . . . local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended[.]" 29 U.S.C. § 794(b)(1) Therefore, the "program or activity" is the local government and its constituent components, not the specific work projects that may make use of such funds. *See*

[2] The Response goes on to state: "In Bonner v. Lewis, the Ninth Circuit held that 'where federal funding is provided to a department of a state or local government, all of the operations of that department become subject to § 504[.]'" *Id.* (purporting to quote *Bonner v. Lewis*, 857 F.2d 559, 562 (9th Cir. 1988)). The Ninth Circuit said no such thing. This quote appears nowhere in *Bonner* (or any other case), nor does the case present any form of analysis that could be said to stand for such a proposition. *See* 857 F.2d at 662–63. Plaintiff's counsel shall therefore show cause as to why sanctions should not be imposed for making a material misrepresentation of law to this Court, as well as why he should not be referred to the bar for disciplinary action pursuant to the terms of a forthcoming order.

*McMullen v. Wakulla Country Board of County Commissioners*, 650 Fed. Appx. 703, 706 (11th Cir. 2016) ("The definition also covered, in the case of federal assistance to a State or local government, the State or local government that distributes the assistance and each department or agency that receives it."). Accordingly, Plaintiff need not allege that the specific street repairs that allegedly triggered a duty to build sidewalk ramps each received federal funding; it is enough that the entity tasked with making street repairs receives federal funds writ large. *Id.*; *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991) (noting that a statute amending the Rehabilitation Act was promulgated so that it "would apply to the entirety of any state or local institution that had a program or activity funded by the federal government.").[3] The Amended Complaint highlights that "[m]any contracts show telltale signs of federal funding that would trigger Section 504 violations," including projects during federal infrastructure funding cycles and work on roads connected to federal facilities. (**ECF No. 4 ¶¶ 95–97**). Accordingly, Plaintiff meets her burden at the pleading stage of alleging that "the program or activity from which the plaintiff was excluded or denied benefits receives federal financial assistance." *Pagán*, 2026 WL 2620610, at *6.

### iii. Sidewalk Accessibility

Barranquitas moves to dismiss Plaintiff's claims related to impassible sidewalks and missing sidewalk ramps on the basis that (1) "the Amended Complaint fails to

---

[3] It is worth noting that the Seventh Circuit in *Schroeder* also discussed that "the amendment was not . . . intended to sweep in the whole state or local government, so that if two little crannies (the personnel and medical departments) of one city agency (the fire department) discriminate, the entire city government is in jeopardy of losing its federal financial assistance." 927 F.2d at 962. These concerns are not present here. Plaintiff alleges that the Municipality of Barranquitas is responsible for maintaining public streets and sidewalks and that they received federal funds to assist in the repairs of streets and/or sidewalks; no entity is at risk of being swept in. If discovery reveals that a constituent entity of Barranquitas is responsible for maintaining streets and sidewalks and is the recipient of federal funds, that constituent entity would more appropriately be considered the program or activity under the Rehabilitation Act. *Id.*

plausibly allege that the sidewalks—viewed in their entirety—are inaccessible to persons with disabilities," and (2) that existing sidewalks need not be retrofitted absent qualify alterations and Plaintiff has failed to plausibly allege that such alterations occurred. (**ECF No. 19 at 1, 6**). Barranquitas does not dispute that Plaintiff is a qualified individual under the ADA and Rehabilitation Act, so the Court is left to decide whether she was excluded from participation in or denied the benefits of some public entity's services, programs, or activities and that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Parker*, 225 F.3d at 5.

With respect to the contention that Plaintiff fails to plausibly allege that the sidewalks are inaccessible to people with disabilities, Barranquitas does not articulate this argument beyond a single sentence in the introduction to its Motion to Dismiss. (**ECF No. 19 at 1**). Irrespective of whatever arguments Barranquitas might have made to support this assertion, the Amended Complaint plainly alleges that Plaintiff visited locations identified with specific GPS coordinates and that she "experienced a series of difficulties due to the numerous architectural barriers that still persist on the ramps and sidewalks of Barranquitas, which made it difficult for her to move with comfort and safety." (**ECF No. 4 ¶ 49**). The Court must accept these allegations as true and therefore concludes that Plaintiff plausibly alleges that the identified sidewalks, corners, and ramps are inaccessible to her at the pleading stage. *See Concepción-Bruno v. Municipality of Vega Alta*, 2026 WL 1481628, *2 (D.P.R. May 27, 2026) (holding that allegations of impassable sidewalks satisfied *Twombly* and *Iqbal*'s plausibility requirement where plaintiff alleged precise GPS coordinates and identified the ADA deficiencies); *Parker v. Hurley*, 514 F.3d 87, 90 (1st Cir. 2008).

Barranquitas focuses considerably more attention on the argument that Plaintiff fails to allege any qualifying alterations performed by Barranquitas that would trigger their obligation under the ADA to install curb ramps. (**ECF No. 19 at 5**). Under the regulatory framework established by the Attorney General as directed under the ADA, "[e]ach facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992." 28 C.F.R. § 35.151(b)(1). According to Barranquitas, because Plaintiff does not plausibly allege that these locations were altered through construction projects, they were under no obligation to repair noncompliant sidewalks. Plaintiff, in turn, argues that "[t]he Amended complaint contains specific factual allegations regarding alterations, including that the Municipality conducted road work, resurfacing projects, and infrastructure improvements on identified streets without installing curb ramps," and points to municipal contracts documenting such alterations. (**ECF No. 20 at 2**).

Ultimately, the Court cannot, and need not, resolve the question of whether the strictures of Section 35.151 apply to the identified locations based on alleged alterations made to them. This case at the pleading stage is much less complicated than the parties endeavor to make it. The question this Court must ask is whether Barranquitas discriminated against Plaintiff by denying her access to public services or facilities, not whether Barranquitas has complied with the implementing regulations of the ADA. *See Iverson*, 452 F.3d at 100–103. This Court has held on multiple occasions that a qualified individual succeeds in stating a claim under Title II and the Rehabilitation Act where they

plausibly allege that sidewalk inefficiencies affect their ability to visit public facilities or attend public functions. *See Betancourt-Colon v. City of San Juan*, 2020 WL 5221713, *4 (D.P.R. Sept. 1, 2020); *Pagán*, 2026 WL 2620610, at *7 ("At this early stage of proceedings, it is enough for Plaintiffs to allege that sidewalk inefficiencies affected their right to visit public facilities or community activities."); *Procurador de Personas Con Impedimentos v. Municipality of San Juan*, 541 F. Supp. 2d 468, 474 (D.P.R. 2008) (ruling on motion for judgment on the pleadings that plaintiffs' sidewalk-related claims laid out a cause of action under Title II and the Rehabilitation Act); *Sepúlveda Alicea v. Municipality of Yauco*, 2026 WL 2185764 (D.P.R. July 28, 2026). Whether Barranquitas may show that the sidewalks are not covered facilities or do not indeed violate Plaintiff's rights under Title II of the ADA is a question for a later day. Accordingly, Barranquitas's Motion to Dismiss Plaintiff's Title II and Rehabilitation Act claims based on sidewalk inadequacies is **DENIED**.

**iv. Illegal Parking**

With respect to Plaintiff's allegations regarding Barranquitas's failure to prevent public parking obstructing access to sidewalks and accessible ramps, Barranquitas argues that they cannot suffice to create liability under the ADA and Rehabilitation Act. (**ECF No. 19 at 6–7**). Barranquitas contends that the alleged violations occurred during a single day, and that "isolated or temporary interruptions in access to a sidewalk" do not "rise to a permanent architectural barrier to the disabled." (**ECF No. 19 at 7**). Barranquitas further argues that "illegal parking is a hazard for the disabled and non-disabled alike," and that the alleged "barriers" are attributable to the conduct of third parties. (**ECF No. 19 at 7**).

Plaintiff in turn argues that Barranquitas maintains a discriminatory policy of not enforcing parking regulations. To do so, she argues that the observed violations were observed on multiple occasions, and that the obstacles created by illegally parked cars are attributable to Barranquitas because they have painted lines indicating that individuals may park in these areas. (**ECF No. 20 at 6–10**). Because the Amended Complaint contains no allegations that Barranquitas painted lines that supposedly sanction parking that obstructs sidewalk ramp access, any arguments premised on this fact, asserted for the first time in Plaintiff's Response brief, must not be considered.[4] *See Ortiz v. Jimenez-Sanchez*, 98 F. Supp. 3d 357, 365 n. 5 (D.P.R. 2015) ("[T]he plaintiffs cannot, of course, add allegations or claims by furnishing them for the first time in an opposition to a motion to dismiss.").

Despite Plaintiff's attempts to recast the Amended Complaint's theory of discrimination as being predicated on Barranquitas's intentional conduct in painting lines that encourage obstructive parking, the Amended Complaint plainly presents a theory of neglect by Barranquitas in preventing obstructive parking. *See* (**ECF No. 4 ¶ 63**) ("Barranquitas has also failed to regulate parking violations, allowing vehicles to obstruct curb ramps and pedestrian pathways, further limiting [Plaintiff's] ability to move freely

---

4 The Amended Complaint mentions "park" or "parking" a total of forty-five times. Nowhere, however, does the Amended Complaint even hint at an allegation that the Municipality painted parking lines in a manner so as to obstruct sidewalk access. Nevertheless, Plaintiff asserts in her Response that "The Amended Complaint alleges . . . that the Municipality has painted parking lines on or adjacent to sidewalks in multiple locations throughout Barranquitas," and proceeds to make this allegation the linchpin of her argument. (**ECF No. 20 at 6**). Once again, the Court finds that counsel for Plaintiff is flagrantly in violation of his duty of candor to this tribunal. *See* P.R. R. of Professional Conduct 3.3(b). Counsel for Plaintiff's blatant misstatement of a fact so crucial to the resolution of a question before the Court, whether by way of intentional dishonesty or reckless inattention, demonstrates a lack of respect for this Court, his client, and himself. Furthermore, despite Barranquitas raising the absence of this allegation from the Amended Complaint in its Reply, thereby putting Plaintiff's counsel on further notice of his false assertion, Plaintiff's counsel failed to correct himself in his Sur Reply. Accordingly, counsel for Plaintiff shall once again show cause as to why sanctions shall not be issued pursuant to the terms of a forthcoming order.

and safely. Despite the clear need to implement and enforce parking restrictions, local authorities have neglected to install proper signage, impose penalties, or take corrective measures to prevent illegal parking in these critical areas."). Accordingly, the Court will consider Plaintiff's theory that "even if the Municipality had not painted lines, its failure to implement policies enforcement measures, signage, physical barriers, or other remedial actions to eliminate systematic obstruction would still establish municipal responsibility for the resulting inaccessibility." (**ECF No. 20 at 9**).

The Court is not aware of any cases within the First Circuit that have addressed the question of whether persistent failure to enforce illegal parking that has the effect of denying disabled individuals access to public facilities can constitute a violation of Title II and the Rehabilitation Act. Plaintiff relies on *Munoz v. County of Los Angeles*, in which the Central District of California ruled under similar circumstances to the case at bar that plaintiff successfully stated a claim under Title II and the Rehabilitation Act where he alleged that the county failed to act against pervasive parking on sidewalks which prevented him from navigating sidewalks and roadways. 558 F. Supp. 3d 845 (C.D. Cal. 2021). In doing so, the court recognized a slew of decisions within the Ninth Circuit that "concluded that temporary or removeable obstructions, even when placed by third parties, may constitute an ADA violation when those obstructions are systemic or pervasive or persist for an unreasonable amount of time." *Id.* at 849 (citing *Cohen v. City of Culver City*, 754 F.3d 690, 699–700 (9th Cir. 2014); *Montoya v. City of San Diego*, 434 F. Supp. 3d 380, 838–41 (S.D. Cal. 2020); *LA All. for Hum. Rts. V. City of Los Angeles*, 2021 WL 1546235, *52 (C.D. Cal. Ap. 20, 2021). Other courts who have addressed this question have reached the same conclusion. *Disability Rights New York v. City of New York*, 2023 WL 6308574, *9 (S.D.N.Y. Sept. 28, 2023) (holding that

plaintiffs stated a claim against the city for failure to prevent parking obstructing sidewalks and pedestrian crossings).

The Court finds the reasoning outlined in *Munoz* and related cases to be consistent with First Circuit precedent governing claims under Title II and the Rehabilitation Act. Under Title II, Plaintiff must allege that she "was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities . . . and [] that such exclusion . . . was by reason of the plaintiff's disability." *Parker*, 225 F.3d at 5. Plaintiff alleges that "[t]he failure to . . . regulate parking in the Municipality of Barranquitas has created significant barriers that prevent Mrs. Alicea Berrios from accessing businesses, services, and public spaces in the same manner as individuals without disabilities." While Barrranquitas may be correct that "[e]ven under Ninth Circuit precedent, ADA liability for temporary obstructions by third parties arises only when those obstructions **are systemic or pervasive or persist for an unreasonable amount of time**," (**ECF No. 19 at 7**) (emphasis in original), the Amended Complaint plainly alleges "[s]ystemic tolerance of illegal vehicle parking on sidewalks and curb ramps." (**ECF No. 4 ¶ 121.1**). This is supported by allegations that Barranquitas has failed to issue fines for illegal parking or erect signage informing that such parking is disallowed. (**ECF No. 4 ¶ 63**). Nor is Barranquitas correct that the Amended Complaint limits the illegal parking allegations to a single day; rather, Plaintiff alleges that private vehicles are "consistently allowed to park illegally on sidewalks, pedestrian pathways, and even on curb ramps" and that such deficiencies are continuous. (**ECF No. 4 ¶¶ 19, 60**).

With respect to Barranquitas's argument that the nonenforcement of parking violations is simply a nuisance that affects disabled and non-disabled individuals alike and is therefore nondiscriminatory, the resolution of this question is inappropriate at the

motion to dismiss stage. *See Toledo v. Sanchez*, 454 F.3d 24, 32 (1st Cir. 2006) ("The University may ultimately be able to negate the charges of discrimination or show that the two instances of 'discrimination' in fact were simply the application of neutral criteria that applied to disabled and nondisabled students alike . . . [h]owever, at this stage in the litigation, [plaintiff's] complaint sufficiently alleges state conduct that violated Title II of the ADA."). However, the Court finds this argument to be illogical to the realities faced by individuals with mobility impairments. It is readily apparent that an individual in a motorized wheelchair who finds their path down a sidewalk blocked by a car illegally parked on the sidewalk faces an altogether different encumbrance than an individual who might simply step off the sidewalk and walk around the car. The Court therefore finds that Plaintiff has adequately alleged discrimination based on the failure of Barranquitas to prevent illegal parking that renders her unable to navigate to public spaces and facilities. *See Munoz*, 558 F. Supp. 3d at 849–50; *Disability Rights New York*, 2023 WL 6308574, at *9.

**v. Compensatory Damages**

In addition to injunctive relief, Plaintiff claims "compensatory damages in the amount of $226,209 representing the projected 20-year cost of alternative transportation necessitated by the Municipality's ADA violations" and "compensatory damages for past economic losses incurred since July 1, 2025." (**ECF No. 4 ¶¶ 137.1–137.2**). Barranquitas argues that these compensatory damages are unavailable under Title II and are impermissibly speculative. (**ECF No. 19 at 9**).

Private individuals claiming compensatory damages under Title II and the Rehabilitation Act must show (1) intentional discrimination and (2) that the damages alleged are recoverable compensatory damages under Title II and the Rehabilitation Act.

*Nieves-Marquez*, 353 F.3d at 126. "[C]ompensatory damages are generally available under both statutes." *Id*.; *Vazquez v. Municipality of Juncos*, 756 F. Supp. 2d 154, 167 (D.P.R. 2010). Plaintiff contends that intentional discrimination is pled via "deliberate indifference through 35 years of ADA enforcement providing constructive knowledge[.]" (**ECF No. 29 at 5**). At this early stage of the proceedings, it is inappropriate for the Court to rule on the availability of compensatory damages. *See Nieves-Marquez*, 353 F.3d at 127 ("At this point, we cannot say with certainty that a damages award under § 504 or Title II is precluded on these pleadings, at least for intentional conduct causing economic harm."). Accordingly, Barranquitas Motion to Dismiss with respect to compensatory damages for alleged harm incurred by Plaintiff is **DENIED**.

### B. First Amendment Claim

In addition to her discrimination claims, Plaintiff brings a claim under Section 1983 alleging violation of her First Amendment rights to freedom of speech and assembly. (**ECF No. 4 ¶ 161**). In essence, Plaintiff claims that the existing barriers prevent her ability to realize plans to speak and assemble on the aforementioned inaccessible locations, thereby violating her First Amendment rights. Because Plaintiff does not allege a cognizable injury in fact, she does not have standing to assert this claim.

#### i. Standing

For standing requirements to be met, "the plaintiff must have suffered an injury in fact, that is fairly traceable to the challenged conduct, and that may be redressed by the requested relief." *McBreairty v. Miller*, 93 F.4th 513, 518 (1st Cir. 2024). The concerns raised by Barranquitas only implicate the question of whether Plaintiff has suffered an injury in fact. Plaintiff bears the burden of establishing that they have suffered an injury

in fact. *Santiago-Ramos v. Autoridad de Energía Eléctrica de Puerto Rico, AEE*, 834 F.3d 103, 106 (1st Cir. 2016).

"To qualify as an injury-in-fact, a complained-of harm must be 'concrete and particularized' and 'actual or imminent.'" *Conservation Law Foundation, Inc. v. Academy Express, LLC*, 129 F.4th 78, 87 (1st Cir. 2025) (quoting *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016)). A harm is concrete if it is real and not abstract; it need not be tangible, nor any more than "[a]n identifiable trifle." *Id*. "[W]ith respect to the concrete-harm requirement … courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Spokeo*, 578 U.S. at 341). "[C]ertain harms readily qualify as concrete injuries under Article III … If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion*, 594 U.S. at 425. A harm is particularized if it "'affect[s] the plaintiff in a personal and individual way.'" *Conservation Law Foundation*, 129 F.4th at 87 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n. 1 (1992)). The requirement of "actual or imminent" requires that harm be "not conjectural or hypothetical." *Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014).

The Court concludes that the harm alleged by Plaintiff is not concrete, actual, or imminent. The Amended Complaint states that Barranquitas's "failure to maintain accessible public forums constitutes content-neutral discrimination that nevertheless has a disparate impact on disabled individuals' exercise of First Amendment rights, effectively silencing their voices in the public square," and that "the ongoing nature of these violations creates a chilling effect on [Plaintiff's] First Amendment activities, as she must

choose between risking physical harm to exercise constitutional rights or foregoing those rights entirely, a choice that non-disabled citizens never face." (**ECF No. 4 ¶¶ 159, 161**). Plaintiff is correct that the sidewalks at issue are public fora in which the government's ability to restrict speech is limited. *See United States v. Grace*, 461 U.S. 171, 179 (1983) ("Sidewalks, of course, are among those areas of public property that traditionally have been held open to the public for expressive activities and are clearly within those areas of public property that may be considered, generally without further inquiry, to be public forum property."). However, Plaintiff does not plausibly allege that her rights to speak or assemble have been chilled by virtue of an alleged policy of Barranquitas to neglect removing obstacles to disabled persons in the form of impassable sidewalks.

The Supreme Court has recognized that "constitutional violations may arise from the deterrent, or 'chilling' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 11 (1972). "Chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Houston Chronicle Pub. Co. v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007) (citing *Meese v. Keene*, 481 U.S. 465, 473 (1987)). However, Plaintiff's speech is not "chilled" simply because she says it is. *Laird*, 408 U.S. at 13–14 ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.") (internal quotations omitted); *Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 30–33 (1st Cir. 1999). In order for speech to be chilled, the Plaintiff must point to some "exercise of governmental power [that is] regulatory, proscriptive, or compulsory in nature[.]" *Laird*, 408 U.S. at 11; *see also Mangual v. Rotger-Sabat*, 317 F.3d 45, 56–57

(1st Cir. 2003) (highlighting that a plaintiff who has not suffered an enforcement action can obtain Article III standing only when (1) they allege an intent to engage in some form of conduct proscribed by the statute with a credible threat of prosecution, or (2) they are chilled in exercising their rights in order to avoid enforcement consequences). But Plaintiff does not point to any policy, regulation, ordinance, law, or practice of enforcement by Barranquitas that prevents her from speaking or assembling in her chosen manner. Nor does the Amended Complaint allege that any employee of Barranquitas has taken or would take any action to prevent the First Amendment-protected activities in which Plaintiff seeks to engage were she to attempt to do so. Rather, Plaintiff's alleged inability to speak and assemble is limited by Barranquitas's failure to remove obstacles that limit her ability to physically access her chosen locations. While the Court is sympathetic to the impact of the physical barriers encountered by Plaintiff that limit her ability to engage in her preferred form of advocacy, the "Municipality's deliberate indifference to accessibility barriers" alleged by the Amended Complaint is not the type of "exercise of government power" that is capable of creating an injury in fact on the basis of chilled speech. (**ECF No. 4 ¶ 163**); *Laird*, 408 U.S. at 11. Simply put, the First Amendment does not guarantee a right to all individuals to physically access every single public forum in which they may wish to speak nor mandate that governments create and maintain such fora; rather, it prevents the government from denying individuals their right to assemble or speak in such places. *See Pahls v. Thomas*, 718 F.3d 1210, 1239 (10th Cir. 2013) ("The First Amendment is a restriction on the government's power to abridge speech, not a source of government power—much less a mandate—to orchestrate public discussion.") (internal citations and quotations omitted); *Toleda Area AFL-CIO Council v. Pizza*, 154 F.3d 307, 319 (6th Cir. 1998) ("[T]he First Amendment only protects

individuals' negative rights to be free from government action and does not create positive rights-requirements that the government act.") (internal citations and quotations omitted); *Gartner v. U.S. Information Agency*, 726 F. Supp. 1183, 1187–88 (S.D. Iowa 1989) (noting that the First Amendment is a negative right which "constrains our government from acting in ways which infringe upon our right to free speech; it does not create an affirmative duty upon the government to act."). Accordingly, Plaintiff fails to allege a concrete harm recognized in law.

Even if the Constitution recognized a cognizable injury in the form of individuals who are unable to speak or assemble due to a municipality's failure to remove obstacles that render public fora inaccessible, the injury alleged by Plaintiff is too "conjectural or hypothetical" to meet the actual or imminent requirement. *Kerin*, 770 F.3d at 981. "[I]njury is imminent if it is certainly impending or if there is a substantial risk that harm will occur." *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017). Plaintiff attempts to establish in her Response that her injury is not hypothetical because it is based on "the ongoing nature of the violation and Plaintiff's intent to access these spaces in the future, not speculation about whether barriers will exist," and those barriers are presently in existence. (**ECF No. 20 at 23**). However, the barriers themselves are not the basis of her injury; rather, the barriers' prevention of her realizing her future plans to speak and assemble are what form the alleged First Amendment violation. Plaintiff's claimed injury therefore hinges on whether those barriers will indeed prevent her from realizing her plans, not simply whether the barriers will still exist. Plaintiff's First Amendment claim is centered on the contention that Plaintiff is prevented by physical barriers from realizing her plans to engage in constitutionally protected activities at specified locations, including "[a]nnual organized compliance verification visits to document accessibility violations in

Barranquitas," "[p]eaceful assemblies to raise public awareness about disability rights and municipal discrimination," "[p]ublic demonstrations advocating for ADA compliance in her hometown," "[d]istribution of educational materials about accessibility requirements to residents and visitors," and "[c]ollective advocacy efforts to petition the Municipal government for redress of grievances regarding systematic accessibility violations." (**ECF No. 4 ¶ 147**). However, there are no allegations that *every* sidewalk in Barranquitas is inaccessible to the point that Plaintiff cannot engage in her planned activities in these vicinities. Nor does the Amended Complaint address why other means of accessing these locations are unavailable to Plaintiff, such as petitioning Barranquitas to close the surrounding streets to vehicle traffic during the planned demonstrations, as the streets themselves are not alleged to be impassable by individuals with disabilities. The Court therefore finds that Plaintiff's claimed First Amendment injury is too conjectural and hypothetical to support an actual or imminent injury. *See Sullivan v. City of Augusta*, 511 F.3d 15, 28 (1st Cir. 2007) (ruling that plaintiffs lacked standing to challenge an ordinance governing mass gatherings when it was unclear whether the requirements of the ordinance would be applied to their event).

Because Plaintiff has failed to allege an injury in fact with respect to constitutional violations, she does not have standing to pursue her claims under Section 1983. Accordingly, Barranquitas's Motion to Dismiss such claims is **GRANTED**.

## V. Conclusion

For the aforementioned reasons, Barranquitas's Motion to Dismiss at ECF No. 19 is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September 2026.

***/s/* María Antongiorgi-Jordán**
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**